**FILED**
August 10, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **REYNALDO HERNANDEZ JR.,** *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:24-cv-00565-SH** |
| | § | |
| **THE CITY OF AUSTIN,** *Defendant* | § | |

**ORDER**

Before the Court are Defendant's Motion for Summary Judgment (Dkt. 44), filed March 17, 2026; Plaintiff's Motion to Extend Discovery Deadline, filed March 26, 2026 (Dkt. 45); Plaintiff's Motion for Leave to file Sur-Reply, filed April 21, 2026 (Dkt. 50); and the associated response and reply briefs.

## I. Background

Plaintiff Reynaldo Hernandez Jr., proceeding *pro se*, brings this employment discrimination suit against his employer, the City of Austin, alleging that the City discriminated against him because of his age and ethnicity and retaliated after he engaged in protected activity.

Hernandez, who is male, Hispanic, and was born in 1963, is a Project Manager for the City's Parks and Recreation Department. Amended Complaint, Dkt. 39 at 1, 11. Hernandez began his employment with the Department as a Landscape Architect II in March 2010. *Id.* at 11. In August 2017, he was promoted to the position of Park Development Division Manager, a job with greater responsibilities and supervisory duties than his previous position. Kallivoka Dec., Dkt. 44-1 at 3. Department Assistant Director Liana Berberidou-Kallivoka, a white female with European ethnicity, became Hernandez's direct supervisor and was responsible for completing his annual performance reviews. *Id.*

Kallivoka completed Hernandez's 2019 yearend performance review with input from his previous supervisor. She gave him an overall "successful" rating but found that his "performance needs improvement" in several areas, including communication, employee performance and safety, and conflict management. Dkt. 44-1 at 47-52. Kallivoka advised Hernandez to attend the City's Supervisor and Management Academy and complete his Project Management Professional certification within the year. *Id.* at 59.

In March 2020, Kallivoka issued Hernandez an Initial Work Performance Counseling, stating that his work was deficient in project management, supervision, safety and training, leadership, decision making, planning priorities, employee development, conflict management, trustworthiness, and effective communication. *Id.* at 59-61. Hernandez was warned that he had 90 days to make certain improvements in those areas to "prevent further performance counseling." *Id.* at 5, 61. "By June 2020, [Kallivoka] did not believe that he made sufficient improvement," and Hernandez was given the options of (1) staying in his position as Division Manager and entering a Performance Improvement Plan, or (2) taking a "voluntary demotion to a Project Manager position," a position with 5% less pay. *Id.* at 5. Hernandez agreed in writing to the demotion to Project Manager on July 25, 2020. *Id.* at 70.

In September 2020, Hernandez filed a complaint with the City Auditor Investigations Unit ("CAIU"), which investigates complaints against City employees regarding fraud, theft, and waste of resources. Larson Dec., Dkt. 44-1 at 75. Hernandez alleged that Kallivoka retaliated against him by attempting to "dismantle" his career, making "erroneous assertions" about his work, and pressuring him to accept the voluntary reassignment to Project Manager because she believed he had made an anonymous complaint against her in June 2019. *Id.* at 72.[1] The CAIU referred

[1] The anonymous complaint accused Kallivoka of allowing a former Department employee to stay on the City payroll for several months after he retired to increase his pension. Dkt. 44-1 at 81.

Hernandez's complaint to the City's Human Resources Department ("HR"), which investigated the allegations and found no evidence of retaliation. *Id.* at 73-81. The HR report noted that Hernandez had not alleged unlawful discrimination based on age, national origin, or any other protected category. *Id.* at 77.

In October 2021, Kallivoka reorganized project management teams, including Hernandez's. *Id.* at 6. She reassigned two landscape architect positions (one only on paper) from Hernandez to other project managers and assigned Project Coordinator Ngoc Minh Bruce to report to Hernandez after Bruce complained about her previous supervisor. *Id.* at 6. Bruce also had issues with Hernandez and was reassigned to a new project manager less than a year later. *Id.* at 7. Hernandez believes Kallivoka's reorganization of his team was designed to set him up for failure. *Id.* at 148.

In early 2022, the City hired outside investigator Sheila Gladstone to investigate a race discrimination complaint made by Department employee Sam Williams, a Black male, against Kallivoka. *Id.* at 129. Kallivoka also had filed a race complaint against Williams. *Id.* During her investigation, Gladstone interviewed Hernandez on March 1, 2022, about his experience with Kallivoka. Hernandez told Gladstone he believed "Kallivoka treated him badly because he is an older Hispanic gay[2] man, and in retaliation for Kallivoka's misguided belief that he was behind the City Auditor's 2020 investigation of her." *Id.* at 141. *Id.* Gladstone determined that Hernandez's allegations were "speculative" and that "he had failed to present evidence of discrimination based on anything other than those who do not perform up to her expectations and standards." Dkt. 44-1 at 141.

On March 3, 2022, Hernandez filed a complaint with HR, accusing Kallivoka of treating him differently from his peers "who are not gay, not Hispanic and younger" and stating that he was

[2] Hernandez does not allege discrimination based on sexual orientation. Amended Complaint, Dkt. 39.

"concerned that this different treatment is because of my sexual orientation and race, as no other explanation makes sense." *Id.* at 148. HR investigated the complaint and concluded that there was no evidence of unlawful discrimination. *Id.* at 176.

On July 13, 2022, Hernandez filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division, alleging discrimination based on age and national origin, hostile work environment, and retaliation. Dkt. 39 at 1 ("EEOC Charge"). He alleged that Kallivoka treated him differently than his peers "who were outside of my protected class" by demoting him to Project Manager, telling him to attend training and complete certifications, and placing a problem employee under his supervision. *Id.* He also alleged that the City had not taken his March 2022 complaint seriously because he was "still awaiting a response" and had "retaliated against for participating in a protected activity." *Id.* at 1-2.

The EEOC investigated Hernandez's EEOC Charge, made no determination on the merits, and issued a right to sue letter on January 10, 2024. *Id.* at 5. Hernandez continues to work at the City's Park and Recreation Department as a Project Manager and Kallivoka has not supervised him since January 2023. Hernandez Tr. at 63:2-8, Dkt. 44-1 at 23.

In his Amended Complaint, Hernandez asserts age and national origin discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.051(1). Dkt. 39 at 14-15. He seeks $300,000 in damages and an injunction ordering the City to cease discriminatory practices.

The City seeks summary judgment on all claims.

## II. Evidentiary Objection

In support of his response to the City's motion for summary judgment, Hernandez attaches four exhibits (Exhs. H, T, U, and Y) purported to be transcripts of secretly recorded meetings he had with his supervisors in 2022 and 2023. Dkt. 48-2 at 145-53, 298-306, 307-18, 386-94. The City asks the Court to strike these exhibits as incompetent summary judgment evidence because they are unauthenticated and contain hearsay, and because Hernandez does not explain who prepared the transcripts and how they were prepared and transcribed. Dkt. 49 at 7.

"Unauthenticated documents are improper as summary judgment evidence." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). The City is correct that Exhibits H, T, U, and Y are not proper summary judgment evidence because they are not authenticated and Hernandez offers no explanation who prepared the transcripts or how they were prepared.

Hernandez attempts to correct the authentication issue in his surreply by attaching a supplemental declaration dated April 21, 2026, stating that he "personally participated in and recorded the meetings reflected in Exhibits H, T, U, and Y." Dkt. 50-2 at 2. The declaration and surreply still do not explain who prepared the transcripts, how they were prepared, and how the purported conversations were accurately transcribed. *Gray v. Experian Info. Sols., Inc.*, No. 1:23-CV-545-RP, 2024 WL 4945023, at *3 (W.D. Tex. Sept. 16, 2024) (striking purported "transcribed phone call" that was unverified, unauthenticated, and contained no "other information verifying that it is an accurate depiction of the alleged conversation").

Exhibits H, T, U, and Y (Dkt. 48-2 at 145-53, 298-306, 307-18, 386-94) are improper summary judgment evidence, and the Court has not considered them. But even if the Court considered these exhibits, Hernandez does not explain how they are relevant to any of his claims or how they raise genuine issues of material fact precluding summary judgment.

### III. Motion for Leave to File Surreply

Hernandez moves to file a surreply to respond to "new arguments" and "new evidentiary objections" he contends the City raised in its reply.

Surreplies are "heavily disfavored." *Butler v. S. Porter*, 999 F.3d 287, 297 (5th Cir. 2021) (citation omitted). "But when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024).

The City does not raise new arguments or evidence in its reply, but does object to some of Hernandez's exhibits. The Court **GRANTS** Hernandez's Motion for Leave (Dkt. 50) to file his sur-reply (Dkt. 50-1) to respond to these evidentiary objections. *Bushidopro, C.A. v. Nippon Pillar Corp. of Am., Inc.*, No. 4:19-CV-4249, 2021 WL 3660766, at *2 (S.D. Tex. Mar. 22, 2021).

### IV. Motion to Extend Discovery Deadline

This case was filed more than two years ago and is set for trial in five weeks. Dkt. 25 ¶ 5.The Second Amended Scheduling Order provides:

> The parties shall complete all discovery on or before March 27, 2026. Counsel may by agreement continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances, and no trial setting will be vacated because of information obtained in post-deadline discovery. Hernandez moves for to extend the discovery deadline by sixty days.

*Id.* ¶ 3.

Hernandez asks for a sixty-day extension to conduct discovery, but presents no extraordinary circumstances for the extension. The Court **DENIES** the Motion to Extend Discovery Deadline (Dkt. 45).

## V. Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution could affect the outcome of the action." *Dean v. Phatak*, 911 F.3d 286, 291 (5th Cir. 2018). When reviewing a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002). The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000).

**A. 42 U.S.C. § 1981 Claim**

Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). To establish a § 1981 claim for contractual discrimination, Hernandez must allege that (1) he is a member of a racial minority; (2) the City intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017).

Hernandez alleges that the City violated § 1981, but alleges no facts showing a violation of that statute. Dkt. 39 at 11. He does not mention his § 1981 claim or otherwise defend it in his response to the City's motion for summary judgment. The Court finds that Hernandez has abandoned his § 1981 claim. *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017).

**B. Discrimination Claims Under Title VII, ADEA, and TCHRA**

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1). The TCHRA prohibits employment discrimination based on race, national origin, sex, and age. TEX. LAB. CODE. § 21.051(1).

The analysis for discrimination claims under Title VII, the ADEA, and the TCHRA generally is the same. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012). For claims to survive a motion for summary judgment, the plaintiff must prove discrimination by a preponderance of the

evidence. *Liedtke v. City of Austin*, --- F.4th ----, 2026 WL 2225275, at *7 (5th Cir. Aug. 3, 2026); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). A plaintiff can prove discrimination by direct or circumstantial evidence. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).

"Direct evidence" is

> evidence which, if believed, proves the fact without inference or presumption. A statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination.

*Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (cleaned up). Direct evidence is rare. *Id.* "Direct evidence shows, on its face, that discriminatory animus partly (or fully) caused an adverse employment action." *Liedtke*, 2026 WL 2225275, at *10.

If the plaintiff presents only circumstantial evidence, then he must prove discrimination inferentially using the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Sandstad*, 309 F.3d at 896. Under that framework, the plaintiff first must establish a *prima facie* case of discrimination, which requires him to show that (1) he belongs to a protected group, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) a similarly situated employee outside of his protected group was treated more favorably. *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021). If the plaintiff makes out a *prima facie* case of discrimination, the burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision. *Id.* If the defendant does so, "the presumption of discrimination disappears," and the plaintiff "must then produce substantial evidence indicating that the proffered legitimate, nondiscriminatory reason is a pretext for discrimination." *Id.*

**1. No Direct Evidence**

When a plaintiff offers remarks as direct evidence, courts apply a four-part test to determine whether they are sufficient to overcome summary judgment. *Id.* To qualify as direct evidence of discrimination, workplace comments must be (1) related to the protected class of persons of which plaintiff is a member; (2) proximate in time to the adverse employment action; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Id.* For an age-based comment to be probative of an employer's discriminatory intent, it must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor" in the adverse employment decision. *Moss*, 610 at 929.

Hernandez points to the following remarks by Kallivoka as direct evidence of discrimination: (1) she referred to him as a "senior member of the division" during his mid-year performance review meeting on May 4, 2022, and (2) said in an email to him on December 2, 2021 that he had requested a "lesser workload" when he had only requested more resources and help to complete his assignments. Dkt. 39 at 12-13; Dkt. 44-1 at 194. Hernandez argues: "By 'senior,' Defendant, Ms. Kallivoka, meant age." *Id.* at 13. He contends that "lesser workload" was a derogatory comment about his Hispanic heritage. Hernandez Tr. at 163:10-164:17, Dkt. 44-1 at 37.

Kallivoka testified that when she referred to Hernandez as a "senior member of his division," she was referring to his experience as "one of the two most experienced Project Managers within the Park Development Division," not his age. Dkt. 44-1 at 9. As to the "lesser workload" comment, she testified that she made that comment because Hernandez had "explicitly asked for project reassignments" in a meeting with her on December 1, 2021. *Id.* at 7-8.

The Court finds that Kallivoka's comments were not "direct and unambiguous" and did not refer to Hernandez's age or ethnicity and thus are not probative of the City's discriminatory intent.

*Moss*, 610 F.3d at 929. Kallivoka's comments "can't be direct evidence of discrimination" because accepting the statements as direct evidence would require an inference. *Clark*, 952 F.3d at 58.

**2. Prima Facie Case Under *McDonnell Douglas***

Because Hernandez does not show direct evidence of discrimination, the Court must apply the *McDonnell Douglas* test to determine whether he has met his initial burden on his prima facie case. To establish a prima facie case of intentional discrimination under *McDonnell Douglas*, Hernandez must show that he (1) is a member of a protected class; (2) was qualified for his position; (3) suffered some adverse employment action by the City; and (4) was treated less favorably than other similarly situated employees outside the protected class. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). The City argues that Hernandez fails to meet the third and fourth factors.

An "adverse employment action" requires a plaintiff to

> "allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." Thus, in determining whether an employment action is adverse, courts must ascertain whether the challenged action reflects discrimination, and, if so, whether the discrimination altered the terms, conditions, or privileges of the plaintiff's employment.

*Liedtke*, 2026 WL 2225275, at *10 (citations omitted). "The Supreme Court has cautioned federal courts not to 'transform Title VII into a general civility code for the American workplace.' Title VII accordingly does not permit liability for de minimis workplace trifles." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 505 (5th Cir. 2023) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

As evidence that he suffered an adverse employment action, Hernandez identifies: (1) his March 2020 Initial Work Performance Counseling; (2) his July 2020 demotion; (3) Kallivoka's "imposition of training expectations not applied to similarly situated employees" between 2019 and 2020, Dkt. 48 at 3; (4) the "denial of supervisory opportunities" from November 2022 through

December 2025, *id.*; (5) "the removal of Capital Improvement Project responsibilities," *id.*; and (6) Kallivoka's "assignment of a high-burden employee (Ngoc Minh Bruce)" to him and her decision to remove two other employees from his supervision in October 2021. *Id.*

**a. Time-Barred Allegations**

The first three actions listed above are time-barred. Before filing suit under Title VII or the ADEA, an aggrieved employee must file a charge of discrimination with the EEOC or the Texas Workforce Commission. *Weathers v. Houston Methodist Hosp.*, 116 F.4th 324, 329 (5th Cir. 2024); *Julian v. City of Houston, Tex.*, 314 F.3d 721, 725 (5th Cir. 2002). "In Texas, the charge must be filed within 300 days after the alleged unlawful act occurred." *Weathers*, 116 F.4th at 329. Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. A plaintiff can only file a charge to cover discrete acts that occurred within the appropriate period. *Id.* Only incidents that took place within the timely filing period are actionable. *Id.*

Because Hernandez filed his EEOC Charge on July 13, 2022, only acts that occurred 300 days before that date – September 16, 2021 – are actionable. *Id.* All prior discrete discriminatory acts are untimely filed and no longer actionable. *Id.* at 115. Hernandez may not rely on his 2020 Initial Work Performance Counseling, his 2020 demotion, or Kallivoka's training demands, which were made between 2019 and 2020 (Hernandez Tr. at 82:12-14, Dkt. 44-1 at 25), to show that he suffered adverse employment actions because those alleged unlawful acts are no longer actionable for his intentional discrimination claim. *Id.*

**b. Supervisory Opportunities and Removal of Capital Improvement Projects**

Hernandez also alleges that he was denied "supervisory opportunities" beginning in November 2022 and that Capital Improvement Project responsibilities were taken away from him, but does not specify what supervisory opportunities and projects were taken away. Dkt. 48 at 3. Hernandez testified that he believed that Kallivoka assigned him "the least favorable" projects, but offers no evidence of those assignments. Hernandez Tr. at 87:13-19, Dkt. 44-1 at 26. Nor does he explain how those "less favorable" projects materially affected a term, condition, or privilege of his employment. *Id.* at 88:1-25. Hernandez testified that he remains in his Project Manager position, his pay has not decreased, and that he "likes" his job and the people he works with. *Id.* at 9:1-7, Dkt. 44-1 at 15. He does not come forward with sufficient summary judgment evidence that supervisory responsibilities and projects were removed, and even if he did, he does not show that it affected a term, condition, or privilege of his employment. "An adverse employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Jones v. Dallas Cnty.*, 47 F. Supp. 3d 469, 496 (N.D. Tex. 2014).

**c. Supervisee Assignments**

Hernandez also does not show that Kallivoka's decision to reassign Bruce to him and remove a supervisee affected a term, condition, or privilege of his employment. "These allegations involve administrative matters and are not adverse employment actions." *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998); *see also Aguirre v. Valerus Field Sols., L.P.*, No. H-15-3722, 2019 WL 2570069, at *24 (S.D. Tex. Jan. 23, 2019) (finding that "the amount of assigned work" is "simply not the type of action[] that constitute an adverse employment action for purposes of a disparate treatment claim"), *R. & R. adopted*, 2019 WL 989413 (S.D. Tex. Mar. 1, 2019).

The Court finds that Hernandez has not shown that he suffered an adverse employment action.

**3. No Evidence of Disparate Treatment**

Hernandez also offers no competent summary judgment evidence that a similarly situated employee outside of his protected group was treated more favorably. *Watkins*, 997 F.3d at 282. For example, Hernandez complains about the assignment of Bruce, but acknowledges that Bruce also was assigned to his comparators. Hernandez Tr. at 106:25-109:10, Dkt. 48-1 at 29. Because Hernandez does not offer sufficient summary judgment evidence to support all requisite elements of his discrimination claim, he does not show a prima facie case of discrimination.

**4. Legitimate and Nondiscriminatory Reasons**

Even if Hernandez had demonstrated a prima facie case of discrimination, he does not offer substantial evidence that the proffered legitimate, nondiscriminatory reasons for the City's purported adverse actions were a pretext for discrimination. Kallivoka testified that in his two years as Division Manager, Hernandez "struggle[d] with that position's responsibilities as demonstrated by poor communications, poor organizational skills, project delays and budget overages, failures to provide leadership, and critical failures in crew safety." Dkt. 44-2 at 4. She also testified that she rated Hernandez as "performance needs improvement" because he struggled in these areas, not because of his age or national origin. *Id.* at 4-5.

As to Hernandez's complaints about supervisee assignments, Kallivoka testified that she made the decisions to reassign supervisees because Hernandez struggled "managing workloads" and she had "to address the Division's workload and business needs." *Id.* at 6. She explains that one landscape architect was removed from Hernandez's supervision because she resigned from her employment, and another asked to be reassigned. *Id.* Kallivoka states that she reassigned Bruce to Hernandez "to relieve the strained relationship between Williams and Bruce that did not seem to be otherwise resolvable. I believed at the time this would give Bruce a fresh start with a new supervisor, and help identify appropriate training for her, as necessary." *Id.* Kallivoka adds that

she reassigned some projects to other project managers because Hernandez had requested that those projects be reassigned. *Id.* at 7-8. Other than his subjective belief that Kallivoka made these decisions because of his age and ethnicity, Hernandez offers no evidence to rebut her legitimate and nondiscriminatory business reasons for her actions.

**B. Retaliation Claim**

Hernandez alleges that the City retaliated against him after he engaged in protected activity. To establish his retaliation claim, he must show that (1) he participated in an activity protected by the statutes, (2) the City took an adverse employment action against him, and (3) a causal connection exists between the protected activity and the adverse employment action. *Wallace*, 57 F.4th at 224. If Hernandez establishes a prima facie retaliation claim, the burden shifts to the City to state a legitimate, non-retaliatory reason for its decision. *Id.* If the City provides one such reason, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Id.* To avoid summary judgment, the employee must show "a conflict in substantial evidence" on the question "whether the employer would not have taken the action 'but for' the protected activity." *Id.*

Hernandez filed a complaint against Kallikova with CAIU in September 2020, alleging that she retaliated against him by trying to "dismantle" his career because she believed he had filed a fraud complaint against her in June 2019. Dkt. 44-1 at 72. Because the 2020 CAIU Complaint did not mention national origin or age, Hernandez now relies on his March 2022 HR Complaint to show he engaged in protected activity.

The Court finds that the March 2022 HR Complaint qualifies as protected activity, but Hernandez does not satisfy the remaining elements. To show an adverse employment action,

Hernandez relies on the same purported adverse employment actions he relies on to support his discrimination claim. Most of these actions occurred before his March 2022 HR Complaint and so cannot qualify as retaliation. As explained above, Hernandez does not offer competent summary judgment evidence to show that the actions that occurred after March 2022 (lack of supervisory opportunities and removal of projects) happened or qualify as adverse employment actions. Nor does Hernandez offer any evidence that Kallivoka took any of these actions because he filed the March 2022 HR Complaint. He does not establish a prima facie case of retaliation or rebut the City's legitimate and nondiscriminatory business reasons for Kallivoka's actions.

### C. Hostile Work Environment Claim

Finally, Hernandez alleges that Kallivoka created a hostile work environment. The City argues that it is entitled to summary judgment because Hernandez admitted in his deemed admissions that he did not suffer a hostile work environment based on age or national origin, and that his allegations do not rise to the level of a hostile work environment under the ADEA or Title VII. Because Hernandez does not respond to the City's arguments, he has abandoned his hostile work environment claim. *Matter of Dallas Roadster*, 846 F.3d at 126. Even if Hernandez had not abandoned his hostile work environment claim, his allegations do not clear the high bar for a hostile work environment because they do not show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" that was sufficiently pervasive to alter the conditions of his employment. *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009).

### D. Conclusion

Hernandez has not come forward with sufficient summary judgment evidence to create a genuine dispute as to any material fact. Accordingly, the City is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

## VI. Summary of Rulings

The Court:

(1) **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 44);

(2) **DENIES** Plaintiff's Motion to Extend Discovery Deadline (Dkt. 45); and

(3) **GRANTS** Plaintiff's Motion for Leave to file Sur-Reply (Dkt. 50).

The Court will enter Final Judgment in a separate order.

**SIGNED** on August 10, 2026.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE